AO 106 (Rev. 01/09) Application for a Search Warrant

# United States District Court
### for the
### Western District of New York



### In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

Electronic devices recovered during the July 14, 2017, authorized search of Daniel Paul's residence, located at 205 Weiss Street, Buffalo, New York, pursuant to a search warrant authorized on July 13, 2017, by United States Magistrate Judge Michael J. Roemer; as described in Attachment A, attached hereto and incorporated herein by reference.

Case No. 17-M-99

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

### See Attachment A, Schedule and Description of Facilities to be Searched;
### attached hereto and incorporated by reference as though set forth fully herein

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized):*

### See Attachment A, Particular Items/Information to be Seized;
### attached hereto and incorporated by reference as though set forth fully herein

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of Title 21, United States Code, Section 841.

The application is based on these facts:

- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

GREGORY CONWALL
TASK FORCE OFFICER
FEDERAL BUREAU OF INVESTIGATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  August 2, 2017

*Judge's signature*

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

City and state:  Buffalo, New York

## ATTACHMENT A

## Items to Be Searched/Information to Be Seized

**I.   Items to Be Searched**

1.   DELL laptop, Inspiron N4010, 8DWBSN1 (Subject Device 1)

2.   TOSHIBA laptop, Model: PSL33U-027018, serial number: 96090281W (Subject Device 2)

3.   D2 tablet, serial number: H727GWH1304 (Subject Device 3)

4.   CRICKET LG cell phone, Model: LGB460, serial number 501CYLH626016, IMEI: 014109-00-626016-3 (Subject Device 4)

5.   KYOCERA cell phone, Model: S2151 KONA, FCC ID: V65S2151 (Subject Device 5)

6.   ALCATEL PIXI cell phone, Model: 4028S, FCC ID: 2ACCJH027 (Subject Device 6)

7.   CRICKET LG cell phone, Model: LGH343, serial number: 510CYYQ792258, IMEI: 359784067922589 (Subject Device 7)

8.   SAMSUNG cell phone, Model: SM-B311V, FCC ID: A3LSMB311V (Subject Device 8)

9.   SAMSUNG cell phone, Model: SM-J327P, FCC ID: A3LSMJ327P (Subject Device 9)

10.   CRICKET LG cell phone, Model: LG8343, serial number: 6010YPY990816, IMEI: 359784069908164 (Subject Device 10)

11.   COOLPAD cell phone, Model: Coolpad 3300A, FCC ID: R38YL3300A (Subject Device 11)

12.   ALCATEL cell phone, serial number: 6PALA205GV2B, FCC ID: RAD527

(Subject Device 12)

13.    ZTE cell phone, Model: Z7680, serial number: 321933312973,

IMEI: 862975020645172 (Subject Device 13)

14.    ALCATEL ONE TOUCH cell phone, Model: A462C. FCC ID: 2ACCJB013

(Subject Device 14)

15.    CRICKET LG cell phone, Model: LGH343, serial number: 511CYEA071244,

IMEI: 359784060712441 (Subject Device 15)

16.    LG cell phone, Model: LGMS330, serial number: 602CYJZ050764,

IMEI: 357885-07-050764-8 (Subject Device 16)

17.    SAMSUNG CRICKET cell phone, Model: SCH-R261, FCC ID: A3L5HR261

DEC: 268435462403279844 (Subject Device 17)

18.    LG VERIZON cell phone, Model: LGVS876, FCC ID: ZNFVS876

(Subject Device 18)

19.    Cell phone, Model Z223, serial number: 322660315921, IMEI:

868899023360155 (Subject Device 19)

20.    ZTE cell phone, Model: Z812, serial number: 327863831051, IMEI:

869578025560041 (Subject Device 20)

21.    ZTE cell phone, Model: Z828TL, serial number: 320367276604, IMEI:

860154031142734 (Subject Device 21)

22.    LG cell phone, Model: LGL44L, IMEI: 354875-07-058959-0

(Subject Device 22)

23.    LG cell phone, Model: LG328B6, serial number: 606CYDG418010, IMEI:

358837-07-418010-3 (Subject Device 23)

24.    ALCATEL cell phone, serial number: 014404000587715, FCC ID: RAD527

(Subject Device 24)

which were seized by members of the Federal Bureau of Investigation, Safe Streets Task Force, 205 Weiss Street, lower, Buffalo, New York on or about July 14, 2017.


## II.   Information to Be Seized from Subject Devices 1-24

All stored content related to drug trafficking and content tending to prove relationships between any co-conspirators or any acts furthering the unlawful drug trafficking, including, but not limited to:

1.   Text messages (incoming and outgoing);
2.   Recent calls (incoming and outgoing);
3.   Missed Calls;
4.   Contact List;
5.   Appointment Calendar;
6.   Photographs;
7.   Videos;
8.   Notes; and
9.   Reminders.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

STATE OF NEW YORK   )
COUNTY OF ERIE        )        SS:
CITY OF BUFFALO     )

I, **GREGORY CONWALL**, Task Force Officer of the Federal Bureau of Investigation, United States Department of Justice, having been duly sworn, states as follows:

1.      I am a Deportation Officer for the Department of Homeland Security, Immigrations Custom Enforcement, Enforcement and Removal Operations. I am currently a Task Force Officer (TFO) assigned to the Federal Bureau of Investigation (FBI) Safe Streets Task Force (SSTF). As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.      I have served on the FBI Safe Streets Task Force since April 2016. I am currently assigned as a TFO to the Buffalo Division of the FBI, which is in the Western District of New York. In my career as an FBI TFO and as a Deportation Office with DHS, I have investigated many federal crimes, including violent criminal matters. I have participated in investigations involving drug trafficking and organized crime matters. In addition, I have had the opportunity to work with several other FBI agents and other law enforcement agents and officers of varying experience levels, who have also investigated drug trafficking networks, with regard to the manner in which controlled substances are obtained, diluted,

packaged, distributed, sold and used within the framework of drug trafficking in the Western District of New York. As a result of my experience, I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used in the framework of drug trafficking in the Western District of New York and how drug traffickers utilize wire communications to facilitate their illegal activities. My investigative experience detailed herein, and the experience of other law enforcement officers who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein. This affidavit is being submitted for a limited purpose, that is, a probable cause determination, therefore I have not presented all of the facts of this investigation to date, and only provided information necessary to establish probably cause for the search warrant.

3.     This affidavit is being submitted in support of search warrants for which there is probable cause to believe that DANIEL PAUL, herein after PAUL, committed violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute, and distribution of, cocaine, a Schedule II controlled substance).

4.     This affidavit is being submitted in support of a federal search warrant application for the following facilities:

a.     DELL laptop, Inspiron N4010, 8DWBSN1 (Subject Device 1)

b.     TOSHIBA laptop, Model: PSL33U-027018, serial number: 96090281W (Subject Device 2)

c.     D2 tablet, serial number: H727GWH1304 (Subject Device 3)

d.     CRICKET LG cell phone, Model: LGB460, serial number 501CYLH626016, IMEI: 014109-00-626016-3 (Subject Device 4)

e.   KYOCERA cell phone, Model: S2151 KONA, FCC ID: V65S2151

(Subject Device 5)

f.   ALCATEL PIXI cell phone, Model: 4028S, FCC ID: 2ACCJH027

(Subject Device 6)

g.   CRICKET LG cell phone, Model: LGH343, serial number: 510CYYQ792258,

IMEI: 359784067922589 (Subject Device 7)

h.   SAMSUNG cell phone, Model: SM-B311V, FCC ID: A3LSMB311V

(Subject Device 8)

i.   SAMSUNG cell phone, Model: SM-J327P, FCC ID: A3LSMJ327P

(Subject Device 9)

j.   CRICKET LG cell phone, Model: LG8343, serial number: 6010YPY990816,

IMEI: 359784069908164 (Subject Device 10)

k.   COOLPAD cell phone, Model: Coolpad 3300A, FCC ID: R38YL3300A

(Subject Device 11)

l.   ALCATEL cell phone, serial number: 6PALA205GV2B, FCC ID: RAD527

(Subject Device 12)

m.   ZTE cell phone, Model: Z7680, serial number: 321933312973,

IMEI: 862975020645172 (Subject Device 13)

n.   ALCATEL ONE TOUCH cell phone, Model: A462C. FCC ID: 2ACCJB013

(Subject Device 14)

o.   CRICKET LG cell phone, Model: LGH343, serial number: 511CYEA071244,

IMEI: 359784060712441 (Subject Device 15)

p.   LG cell phone, Model: LGMS330, serial number: 602CYJZ050764,

IMEI: 357885-07-050764-8 (Subject Device 16)

q.    SAMSUNG CRICKET cell phone, Model: SCH-R261, FCC ID: A3L5HR261

DEC: 268435462403279844 (Subject Device 17)

r.    LG VERIZON cell phone, Model: LGVS876, FCC ID: ZNFVS876

(Subject Device 18)

s.    Cell phone, Model Z223, serial number: 322660315921, IMEI:

868899023360155 (Subject Device 19)

t.    ZTE cell phone, Model: Z812, serial number: 327863831051, IMEI:

869578025560041 (Subject Device 20)

u.    ZTE cell phone, Model: Z828TL, serial number: 320367276604, IMEI:

860154031142734 (Subject Device 21)

v.    LG cell phone, Model: LGL44L, IMEI: 354875-07-058959-0

(Subject Device 22)

w.    LG cell phone, Model: LG328B6, serial number: 606CYDG418010, IMEI:

358837-07-418010-3 (Subject Device 23)

x.    ALCATEL cell phone, serial number: 014404000587715, FCC ID: RAD527

(Subject Device 24)

(hereinafter referred to as the "SUBJECT MEDIA" for evidence of violations of Title 21, United States Code, Section 841 (possession of a controlled substance with intent to distribute). The particular items/information to be seized from the subject media are more fully described in **Attachment A**, which is attached hereto and incorporated herein by reference as though set forth fully herein.

5.    The SUBJECT MEDIA sought to be searched were recovered by law enforcement during the execution of a federal search and seizure warrant 17-MJ-5215-01 (**See**

4

Attachment B, which is attached hereto and incorporated herein by reference as though set forth fully herein), which was authorized by United States Magistrate Judge Michael J. Roemer, and executed on or about July 14, 2017, at the address of 205 Weiss Street, Buffalo, New York, which is the residence of PAUL.

## BACKGROUND

6.  On February 8, 2012, a New York State Police undercover officer conducted a controlled evidence purchase of five (5) round blue pills.  The pills were suspected morphine pills, which were bought from PAUL at his residence of 205 Weiss Street, Buffalo, New York (hereinafter Premises 1).

7.  On February 21, 2012, a New York State Police undercover officer conducted a controlled evidence purchase of six (6) pink and eight (8) dark blue pills.  The pills were suspected morphine and oxycodone pills, which were bought from PAUL at Premises 1.

8.  On March 1, 2012, a New York State Police undercover officer conducted a controlled evidence purchase of cocaine greater than three (3) grams from PAUL.  The suspected cocaine was not purchased at Premises 1.  The suspected cocaine field tested positive for the presence of cocaine.

9.  Since February of 2017, the FBI Safe Streets Task Force (hereinafter FBI-SSTF) has been investigating PAUL, who has been reported to be responsible for the distribution of illegal drugs in and around Buffalo, New York.

10.     Confidential Source 1 (hereinafter "CS-1") has been providing information to members of the FBI-SSTF since January of 2017.[1]

11.     In January of 2017, CS-1 met with members of the FBI-SSTF. CS-1 reported that PAUL sells prescription drugs and cocaine to customers in and around Buffalo, New York. CS-1 reported that PAUL used to drive a large Chevrolet van to deliver the drugs to his customers, but now uses a pickup truck.

12.     In March of 2017, CS-1 met with members of the FBI-SSTF.  CS-1 reported that PAUL sells prescriptions drugs illegally to include fentanyl patches, morphine, oxycodone, Lortabs, as well as cocaine when he can obtain it. CS-1 stated that PAUL sells one thousand dollars worth of pills each week to an unknown resident of Amherst. PAUL wakes early and begins taking phone orders for pills and then delivers all day.   In October of 2016, CS-1 saw PAUL store the drugs behind a mirror in his bedroom, under his dresser, and in his garage. CS-1 also witnessed PAUL burying drugs in the yard. PAUL does not deal drugs from Premises 1, but rather stores them there.   PAUL then delivers drugs in his personal vehicle, which currently is a new Dodge Ram pickup truck.

---

[1] Confidential Sources will be referred to in the male gender, regardless of the actual gender of the CS. CS-1 has provided information to the FBI since approximately January of 2017. CS-1 states that the information he has provided to the investigative team is based upon his personal observations and/or personal conversations directly with the individuals identified in the investigation. The information provided by CS-1 has been corroborated by the FBI through independent investigation, by information received from other reliable confidential sources, and by information received independently and separately from other law enforcement agencies.   It should be noted that CS-1 is currently indicted by the United States Attorney's Office for witness intimidation, but may be given consideration for his/her assistance in this investigation, and is providing information with the hope of favorable treatment from the United States Attorney's office for his/her cooperation.

13.    On June 18, 2017, CS-1 spoke with PAUL's biological son via telephone. PAUL's son was speaking to CS-1 while he was with PAUL on Father's Day inside Premises 1. PAUL's son told CS-1 that PAUL is still storing drugs inside Premises 1.

14.    In March of 2017, CS-1 made a consensual telephone call to PAUL at 716-342-5899. PAUL stated that he would call CS-1 back. Within minutes of the telephone call, PAUL contacted CS-1 back at telephone number 716-533-3573. PAUL told CS-1 to utilize this number (716-533-3573) from that point forward. During the controlled consensual call, PAUL stated that he was having a hard time with T-bone steaks, but that he had M&M's, to which CS-1 told us was code for Methadone. PAUL also told CS-1 that he wanted to go see "wheelchair Tony" to get patches. Through your affiant's experience and training, patches refers to Suboxone patches.

15.    In March of 2017, CS-1 made a controlled consensual call to PAUL at telephone number 716-342-5899. PAUL answered the call and told CS-1 during this call that he had to call someone to get "Ts", which CS-1 stated was code for Lortabs. PAUL told CS-1 that there is a drought at the end of the month and he only had one "sub" at the time, but could get more if needed. Suboxone is a Schedule 3 controlled substance. At the end of the call, CS-1 asked if he could give PAUL'S number to Confidential Source 2 (hereafter CS-2) for the purpose of selling drugs to CS-2.

16.     CS-2[2] has been providing information to members of the FBI-SSTF since October of 2015.[3]

17.     In Mach of 2017, CS-2 made a controlled consensual call to PAUL at 716-533-3573.   During the call PAUL told CS-2 that he would sell ten (10) Suboxone pills for $300.   PAUL told CS-2 that the cost per pill was $30.   PAUL also told CS-2 that his female friend sells heroin.

18.     In March of 2017, CS-2 made a controlled consensual call to PAUL at 716-533-3573 for the purposes of buying Suboxone pills.   PAUL stated this his supplier would be there in 15 minutes and that he was on the 219 at that point.   CS-2 confirmed that PAUL'S address was 205 Weiss Street (Lower), Buffalo, New York (Premises 1).   CS-2 was searched prior to departing for Premises 1 to meet PAUL, with negative results for contraband.   CS-2 was provided government funds for the purchase and a recording device.   CS-2 entered the driveway of Premises 1 where PAUL exited through a door leading onto the driveway (South side of Premises 1).   PAUL approached CS-2's vehicle where the transmitter on CS-2 recorded the conversation.   During this conversation PAUL stated that he was still waiting for his supplier and asked CS-2 if he could wait around.   CS-2 did not wait around for

---

[2] CS-2 is currently indicted by the United States Attorney's Office for bank robbery and is hoping for favorable consideration from the United States Attorney's Office in exchange for his cooperation in this investigation.

[3] Confidential Sources will be referred to in the male gender, regardless of the actual gender of the CS.   CS-2 has provided information to the FBI since approximately October of 2015. CS-2 states that the information he has provided to the investigative team is based upon his personal observations and/or personal conversations directly with the individuals identified in the investigation.   The information provided by CS-2 has been corroborated by the FBI through independent investigation, by information received from other reliable confidential sources, and by information received independently and separately from other law enforcement agencies.

PAUL'S supplier to arrive and told PAUL that he would contact him later to conduct the purchase. Before departing, an unknown vehicle approached Premises 1 and PAUL turns his attention to the vehicle and directs the unknown person where to park. PAUL then turns back towards CS-2 and states that "he likes tabs" referring to the person who just pulled up to Premises 1. Through your affiant's experience and knowledge, "tabs" is Lortabs, which are Schedule 2 controlled substance. At this time CS-2 departs without purchasing drugs. The individual that "likes tabs" is seen following PAUL into the lower apartment of Premises 1. CS-2 departed the area and met with members of the FBI-SSTF to turn over the recording equipment. CS-2 met up with your affiant and was debriefed. Your affiant reviewed the recording of the meeting and found it to be consistent with the statements made by CS-2 during the debrief.

19.     In March of 2017, CS-2 spoke to PAUL utilizing 716-533-3573. PAUL told CS-2 to meet him at a business in Cheektowaga, New York. CS-2 was searched prior to departing for the meeting with PAUL, with negative results for contraband. CS-2 was provided government funds for the purchase and a recording device. PAUL was observed by surveillance units to be driving the Target Vehicle while he was waiting at the business. CS-2 drove to and met PAUL at the business. CS-2 entered the Target Vehicle on the passenger side.     CS-2 exchanged $300 for a white container that had 10 white pills believed to be suboxone. After the transaction, CS-2 departed the area and met with members of the FBI-SSTF to turn over the narcotics obtained from the controlled evidence purchase as well as the recording equipment.     CS-2 was debriefed and stated that PAUL provided CS-2 with a quantity Suboxone pills. Your affiant reviewed the recording of the controlled evidence purchase and found it to be consistent with the statements made by CS-2 during the debrief.

Testing later done on the suspected Suboxone pills by the Erie County Lab shows that the pills contained buprenorphine, a controlled substance.

20.     In May of 2017, a New York State Police undercover officer (hereafter UC-1), who had been communicating with PAUL at the direction of the FBI via telephone number 716-533-3573, met members of the FBI-SSTF.   UC-1 was provided government funds for the purchase of crack cocaine and a recording device.   UC-1 entered the driveway of 205 Weiss Street, Buffalo, New York where UC-1 exited his vehicle and knocked on the door facing the driveway (South side door).   UC-1 was overheard on a transmitter talking to PAUL at Premises 1.   UC-1 entered Premises 1 (lower) where PAUL and UC-1 had a conversation. PAUL told UC-1 that they would have to take a trip.   UC-1 and PAUL exited Premises 1 and travelled to the Bailey and Kensington area intersection in Buffalo.   PAUL was driving the Target Vehicle at this time.   PAUL told UC-1 to wait for him at the vicinity of the Bailey and Kensington intersection and continued on in the Target Vehicle.   PAUL was observed by surveillance units stopping at 14 Thatcher Avenue, Buffalo, New York (Premises 2) knocking on the door, and entering Premises 2.   A few minutes later, PAUL and an unknown female exited Premises 2.   The unknown female stayed at Premises 2 and PAUL departed in the Target Vehicle where he met up with UC-1.   A transmitter overheard the conversation between UC-1 and PAUL.   PAUL told UC-1 that "This is my main man who does me right every time."   PAUL also told UC-1, after handing UC-1 the suspected crack cocaine that, "this might be over two (referring to the weight of the crack cocaine).   And that's the white. Freshly cooked batch.   What he does is, he gets a big four and a half ounces and then he cooks it back and keeps part of them, and when people need a big, he cooks it back."   PAUL and UC-1 then depart and UC-1 met with members of the FBI-SSTF to turn over the narcotics

obtained from the controlled evidence purchase as well as the recording equipment. UC-1 was debriefed and stated that PAUL provided UC-1 with a quantity of crack cocaine for $300. Your affiant reviewed the recording of the controlled evidence purchase and found it to be consistent with the statements made by UC-1 during the debrief. The evidence purchased is described as a hard white chunky substance that field-tested positive for the presence of cocaine, and was greater than 3.0 grams. The suspected crack cocaine evidence was tested at the Erie County Lab, which confirmed that cocaine was present.

21.     A few weeks later, in May of 2017, UC-1, who had been communicating with PAUL via telephone number 716-533-3573, met members of the FBI-SSTF. UC-1 was provided government funds for the purchase of crack cocaine and a recording device. UC-1 was told by PAUL to meet at a location other than Premises 1. PAUL, who was driving the Target Vehicle, was observed meeting UC-1 at a pre-determined location. UC-1 was overheard on a transmitter talking to PAUL. PAUL told UC-1 that they would have to take a trip. UC-1 and PAUL departed the meet location and travelled to the Bailey and Kensington area intersection in Buffalo. PAUL told UC-1 to wait for him at the vicinity of the Bailey and Kensington intersection and continued on in the Target Vehicle. PAUL was observed by surveillance units stopping at Premises 2, where an unknown male was on the porch. A few minutes later, PAUL departed in the Target Vehicle where he met up with UC-1 and provided the suspected crack cocaine to UC-1. PAUL and UC-1 then depart and UC-1 met with members of the FBI-SSTF to turn over the narcotics obtained from the controlled evidence purchase as well as the recording equipment. UC-1 was debriefed and stated that PAUL provided UC-1 with a quantity of crack cocaine for $1200. Your affiant reviewed the recording of the controlled evidence purchase and found it to be consistent with

the statements made by UC-1 during the debrief.   The evidence purchased is described as a hard white chunky substance that field-tested positive for the presence of cocaine, and was greater than 10.0 grams.

22.     In June of 2017, UC-1, who had been communicating with PAUL via telephone number 716-533-3573, met members of the FBI-SSTF.   UC-1 was provided government funds for the purchase of crack cocaine and a recording device.   UC-1 went to Premises 1 where UC-1 met PAUL who was driving the Target Vehicle.   UC-1 and PAUL departed Premises 1 and travelled to the Bailey and Kensington area intersection in Buffalo. UC-1 waited at the vicinity of the Bailey and Kensington intersection while PAUL continued on in the Target Vehicle and headed to Premises 2.   PAUL was observed by surveillance units stopping at Premises 2, where he was observed talking to two unknown males was on the porch.   A few minutes later, PAUL departed in the Target Vehicle where he met up with UC-1 and provided the crack cocaine to him.   PAUL and UC-1 then depart and UC-1 met with members of the FBI-SSTF to turn over the narcotics obtained from the controlled evidence purchase as well as the recording equipment.   UC-1 was debriefed and stated that PAUL provided UC-1 with a quantity of crack cocaine. Your affiant reviewed the recording of the controlled evidence purchase and found it to be consistent with the statements made by UC-1 during the debrief.   The evidence purchased is described as a hard white chunky substance that field-tested positive for the presence of cocaine, and was greater than 10.0 grams.

23.     On June 29, 2017, PAUL was arrested and charged by the Erie County Sheriff's Department (ECSO) for criminal possession of a controlled substance.   PAUL gave consent

to Deputy Keem to search his person, who discovered 27, 10mg pills of Methadone that were prescribed to Tony Ross.   Agents believe that Tony Ross is also known as "wheelchair Tony" who PAUL had told CS-1 that he had to see "wheelchair Tony" to get some patches.   PAUL was not detained and therefore released from police custody.

24.     In July of 2017, UC-1, who had been communicating with PAUL via telephone number 716-533-3573, met members of the FBI-SSTF.   UC-1 was provided government funds for the purchase of crack cocaine and a recording device.   UC-1 was told by PAUL to meet at Premises 1.   After UC-1 and PAUL met up, UC-1 gave PAUL $900 in US currency to purchase crack cocaine.   UC-1 stated that PAUL told him that he had to go to "his source to get the crack."   UC-1 and PAUL departed Premises 1 and traveled to the Bailey and Davidson area intersection in Buffalo.   PAUL told UC-1 to wait for him at the vicinity of the Bailey and Davidson intersection and continued on in the Target Vehicle.   PAUL was observed by surveillance units stopping at Premises 2, exiting his vehicle, and talking to a black male that exited Premises 2.   PAUL was observed by surveillance sitting in the driveway of Premises 2 waiting for a short period of time before departing.   PAUL departed Premises 2 in the Target Vehicle where he met up with UC-1 and provided the suspected crack cocaine to UC-1.   PAUL told UC-1 that "that's two now we have to go by my house to get the other one."   PAUL told UC-1 to follow him and they departed and headed to the intersection of N. Ogden and E. Lovejoy Streets.   PAUL told UC-1 to wait at that area and then PAUL traveled to the intersection of Davey and E. Lovejoy where he met with an unknown individual who was driving an SUV.   A quick interaction by PAUL and the unknown individual took place through the driver's side window of the SUV before PAUL and the unknown individual departed.   PAUL met back up with UC-1 where PAUL handed

over one bag of suspected crack cocaine.   PAUL and UC-1 then depart and UC-1 met with members of the FBI-SSTF to turn over the narcotics obtained from the controlled evidence purchase as well as the recording equipment.   UC-1 was debriefed and stated that PAUL provided UC-1 with a quantity of crack cocaine for $900. Your affiant reviewed the recording of the controlled evidence purchase and found it to be consistent with the statements made by UC-1 during the debrief.   The evidence purchased at Premises 2 and at the intersection of E. Lovejoy and Davey Streets is described as a hard white chunky substance that field-tested positive for the presence of cocaine, and had a combined weight that was greater than 3.0 grams.   PAUL was observed by surveillance units returning to and entering Premises 1 approximately twenty minutes after he departed the meet with UC-1.

### 205 WEISS STREET (LOWER), BUFFALO, NEW YORK (Premises 1)

25.     On June 21, 2017, a records check through National Fuel shows Daniel Paul has services at Premises 1.

26.     On multiple occasions, most recently on June 21, 2017, CS-1 informed your affiant that Daniel Paul lives at 205 Weiss Street.

27.     Daniel Paul has had many encounters with law enforcement, (multiple encounters per year) where he lists 205 Weiss Street as his residence on police reports.

28.     During controlled narcotics buys in May and June of 2017, CS-2 and UC-1 have observed Daniel Paul entering and exiting 205 Weiss Street (Lower), Buffalo, New York.

29.    FBI Surveillance has observed Daniel Paul entering and exiting 205 Weiss Street (Lower) on numerous occasions between February, 2017 and June, 2017. CS-2 observed an individual who "likes tabs" according to PAUL, enter Premises 1 with PAUL.

30.    FBI surveillance has observed people arriving and departing within minutes at Premises 1, which is consistent with drug sale behavior, on different days surveillance was established at Premises 1.

31.    Following a controlled narcotics buy in July of 2017, surveillance units observed Daniel Paul entering 205 Weiss Street (Lower), Buffalo, New York.

32.    On July 13, 2017, the above information was disclosed in a federal search warrant application to United States Magistrate Judge Michael J. Roemer. Following that disclosure, a federal search warrant was issued by the Court for 205 Weiss Street (lower), Buffalo, New York. A copy of the search warrant is attached hereto as **Attachment B.** (17-MJ-5215-01)

33.    On July 14, 2017, members of the FBI-SSTF executed the aforementioned federal search warrant on the premises of 205 Weiss Street (lower), Buffalo, New York. During the execution of the warrant, PAUL was arrested pursuant to an authorized federal arrest warrant (17-MJ-5216)

34.    The following items of evidentiary value were seized from 205 Weiss Street (lower), Buffalo, New York during the execution of the search warrant: Dell Laptop, Inspiron N4010, 8DWBSN1 located in Master bedroom, bottom dresser drawer; Toshiba Laptop, Model: PSL33U-027018, S/N: 96090281W, located in Master bedroom, bottom dresser drawer; Black Cricket LG cell phone, Model: LGB460, S/N: 501CYLH626016, IMEI: 014109-00-626016-3, located in Master bedroom, nightstand next to bed; Black Kyocera cell phone, Model: S2151 KONA, FCC ID: V65S2151, located in Master bedroom, nightstand next to bed; Black Alcatel Pixi cell phone, Model: 4028S, FCC ID: 2ACCJH027, located in Master bedroom, nightstand next to bed; Black LG Cricket cell phone, Model: LGH343, S/N: 510CYYQ792258, IMEI: 359784067922589, located in Master bedroom, nightstand next to bed; Black Samsung flip phone, Model: SM-B311V, FCC ID: A3LSMB311V, located in master bedroom, nightstand next to bed; Silver Samsung cell phone, Model: SM-J327P, FCC ID: A3LSMJ327P, located in master bedroom, nightstand next to bed; Black LG Cricket cell phone, Model: LG8343, S/N: 6010YPY990816, IMEI: 359784069908164, located in master bedroom, in bag, on floor near bedroom door; Black Coolpad cell phone, Model: Coolpad 3300A, FCC ID: R38YL3300A, located in master bedroom, in bag, on floor near bedroom door; Black Alcatel cell phone, S/N: 6PALA205GV2B, FCC ID: RAD527, located in master bedroom, in bag, on floor near bedroom door; Black ZTE cell phone, Model: Z7680, S/N: 321933312973, IMEI: 862975020645172, located in master bedroom, in bag, on floor near bedroom door; Black Alcatel OneTouch cell phone, Model: A462C, FCC ID: 2ACCJB013, located in master bedroom, in bag, on floor near bedroom door; Black LG Cricket cell phone, Model: LGH343, S/N: 511CYEA071244, IMEI: 359784060712441, located in master bedroom, in bag, on floor near bedroom door; Black and Silver LG cell phone, Model: LGMS330, S/N: 602CYJZ050764, IMEI: 357885-07-050764-8, located in master bedroom, in bag, on floor near bedroom door; Silver Samsung Cricket flip phone, Model: SCH-R261, FCC ID: A3L5HR261, DEC: 268435462403279844, located in master

bedroom, in bag, on floor near bedroom door; Black LG Verizon cell phone, Model: LGVS876, FCC ID: ZNFVS876, located in master bedroom, in bag, on floor near bedroom door; Black flip phone, Model Z223, S/N 322660315921, IMEI: 868899023360155, located in master bedroom, in bag, on floor near bedroom door; Black ZTE cell phone, Model: Z812, S/N: 327863831051, IMEI: 869578025560041, located in master bedroom, in bag, on floor near bedroom door; Black ZTE cell phone, Model: Z828TL, S/N: 320367276604, IMEI: 860154031142734, located in master bedroom, in bag, on floor near bedroom door; Black LG cell phone, Model: LGL44L, IMEI: 354875-07-058959-0, located in master bedroom, in bag, on floor near bedroom door; Green Leafy substance, suspected marijuana, in clear bag located in master bedroom, on top of dresser; One Master Card with name Patience Mitchell located in downstairs Bedroom, inside purse on top of small dresser; One Master Card with name Brittney Zimmerman located in downstairs Bedroom, inside purse on top of small dresser; One New York State benefit card with name Patricia Kemnitzer located in downstairs Bedroom, inside purse on top of small dresser; Black LG cellphone, Model: LG328B6, S/N: 606CYDG418010, IMEI: 358837-07-418010-3, located in a bag in the living room; One White tablet, Model: D2, S/N: H727GWH1304, located on the living room table; Black Alcatel cell phone, S/N: 014404000587715, FCC ID: RAD527, located on the kitchen counter.

35.     While your Affiant, beyond that information set forth above, has no specific information that information pertaining to narcotics trafficking are presently being stored within the identified facilities, based on my training, my experience, my participation in this investigation, and my discussions with other experienced law enforcement personnel, I have learned:

a.    That narcotics traffickers frequently maintain records, notes, ledgers, and other digital records relating to the transportation, ordering, sale and distributions of controlled substances, including cocaine.   Furthermore, I know that the aforementioned records, notes, ledgers, etc., are generally maintained where the traffickers have ready access to them;

b.    That narcotics traffickers commonly maintain records of telephone calls, addresses or telephone numbers in cellular telephones which reflect names, addresses and telephone numbers of their associates in their narcotics trafficking organization, as well as photographs of themselves and their drug trafficking associates; and that

c.    Based on your Affiant's training, experience, and information obtained during this investigation, drug distributors utilize multiple cellular telephones and other electronic devices, such as computers, to facilitate narcotics trafficking.

36.    Accordingly, I submit there is probable cause to believe that evidence and instrumentalities of narcotics trafficking and proceeds from sales of illegal narcotics, will be found within SUBJECT MEDIA.   The specific evidence in this regard is detailed in the attached Schedule of Items to be Seized.

## AUTHORIZATION TO SEARCH AND SEIZE

37.    Accordingly, the application seeks authorization to search for and seize, from the identified facilities listed in Attachment A.   I believe evidence of narcotics trafficking will be found within the identified facilities.   The specific evidence in this regard is detailed in the Schedule of Items to be seized listed in **Attachment A**.

## REQUEST FOR SEALING

18

38.      I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## CONCLUSION

**WHEREFORE,** based on the foregoing, I respectfully submit that there is probable cause to believe that located within the SUBJECT MEDIA, there is evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841 (possession of a controlled substance with intent to distribute).   I therefore respectfully request that the proposed warrants be issued, authorizing a search of the SUBJECT MEDIA for the items listed on **Attachment A**.

GREGORY CONWALL
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me
this ___ day of August, 2017.

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge